**RESOLUTION**
**OF THE BOARD OF MANAGERS OF**
**MATCHBOX FOOD GROUP, LLC**
*(a District of Columbia limited liability company)*

The undersigned, comprising the entire Board of Managers of Matchbox Food Group, LLC, a District of Columbia limited liability company (the "Company"), pursuant to the Company's Fourth Amended and Restated Operating Agreement, effective August 9, 2016 (the "Agreement"), and in accordance with the District of Columbia Uniform Limited Liability Company Act of 2010, do hereby take the actions set forth below, and to evidence any waiver of right to dissent and of any requirement of meeting or notice, do hereby consent and state as follows:

> **WHEREAS**, pursuant to Section 4.1 of the Agreement, "full and exclusive authority to manage the business affairs of the Company shall be vested in a board of managers";

> **WHEREAS**, the board of managers ("Board") wishes for the Company to file a Chapter 11 bankruptcy petition ("Bankruptcy");

> **WHEREAS**, in conjunction with the Bankruptcy, the Company, along with seven subsidiaries (Blue Eagle, LLC; Buttermilk, LLC; Caribou Hunter, LLC; First MB Star, LLC; Gene Poole, LLC; Matchbox Capitol Hill, LLC; and Matchbox Rockville, LLC [collectively, the "MFG Conveying Restaurants"]) will be entering into a Asset Purchase Agreement ("Purchase Agreement") with Thompson Hospitality Corporation, substantially in the form attached hereto as Exhibit A, to sell its intellectual property rights, its membership interest in Thompson Matchbox Ventures LLC, and the assets of the MFG Conveying Restaurants;

> **WHEREAS**, the Company is participating in an audit for Tax Year 2019 (the "Audit");

> **WHEREAS**, the Company's Tax Year 2019 tax return (the "Tax Return") has yet to be filed;

> **NOW THEREFORE, BE IT RESOLVED**, that the Board hereby authorizes any of the following individuals to serve as the sole required signatory for the purpose of doing all acts and executing all documentation necessary for the Bankruptcy, the Purchase Agreement (substantially in the form attached hereto as Exhibit A and including executing documentation on behalf of the Company in its role as Manager of the MFG Conveying Restaurants), the Audit, and the Tax Return, and doing all acts and executing all documents necessary to effectuate such matters (in such form and content consistent with the above as such signatory determines in his sole and exclusive discretion, such determination to be conclusively evidenced by his signature of the respective document): Larry Bensignor, Ronald D. Paul, Robert Pincus, and Edwin V. Sheridan, IV.

*[Signatures to Follow]*

**WITNESS** our hands and official seals on this 21st day of July, 2020, whereby we have caused this Resolution of the Board of Managers to be executed, we declare the same to be our duly authorized act in our capacity as members of the Board of Managers.

**APPROVED:**

Board of Managers:

_____ (SEAL)
Larry Bensignor, Manager

_____ (SEAL)
Ronald D. Paul, Manager

_____ (SEAL)
Robert Pincus, Manager

_____ (SEAL)
Edwin V. Sheridan, IV, Manager

DocuSign Envelope ID: 8E6ECAF9-E877-40C3-9D9F-02BACDFA94C2

<u>EXHIBIT A</u>

<u>Asset Purchase Agreement</u>

<u>[see attached]</u>

DocuSign Envelope ID: 8E6ECAF9-E877-40C3-9D9F-02BACDFA94C2

## ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT** (this "Agreement") is made this 22nd day of July, 2020 (the "Effective Date"), by and between **THOMPSON HOSPITALITY CORPORATION**, a Delaware corporation (the "Purchaser"), **BLUE EAGLE, LLC**, a Virginia limited liability company ("Blue Eagle"), **BUTTERMILK, LLC**, a Florida limited liability company ("Sawgrass Mills"), **CARIBOU HUNTER, LLC**, a Virginia limited liability company ("Pentagon City"), **FIRST MB STAR, LLC**, a Texas limited liability company ("Preston Hallow"), **GENE POOLE, LLC**, a Virginia limited liability company ("Gene Poole") **MATCHBOX CAPITOL HILL, LLC**, a District of Columbia limited liability company ("Capitol Hill"), **MATCHBOX ROCKVILLE, LLC**, a Delaware limited liability company ("Rockville", and together with Blue Eagle, Sawgrass Mills, Pentagon City, Preston Hallow, Gene Poole, Capitol Hill, the "MFG Conveying Restaurants") and **MATCHBOX FOOD GROUP, LLC**, a District of Columbia limited liability company ("MFG" and collectively with the MFG Conveying Restaurants, the "Seller"). The Purchaser and the Seller may hereinafter sometimes be referred to as a "party" and together as the "parties".

WHEREAS, MFG, Purchaser and **THOMPSON MATCHBOX VENTURES LLC**, a Delaware limited liability company ("TMV") entered into that certain Management and Development Agreement, dated July 12, 2018 ("Management Agreement").

WHEREAS, MFG is the owner of: (i) 49 Units (the "Units") of TMV, comprising MFG's entire interest in TMV (whether economic, voting or otherwise), as set forth in that certain Operating Agreement, dated July 12, 2018, ("TMV OA"); and (ii) the mark "MATCHBOX" (U.S. Registration Number 5090462) and all other intellectual property associated with the "Matchbox" restaurant brand (the "MFG IP" and, collectively with the Units, the "MFG Assets").

WHEREAS, MFG is owner of: (i) one hundred percent (100%) of the membership interests in Capitol Hill, Rockville, Preston Hallow, Sawgrass Mills, and Pentagon City.; (ii) ninety-nine percent (99%) of the membership interests in Blue Eagle; and (iii) ninety-five percent (95%) of the membership interests in Gene Poole.

WHEREAS, Blue Eagle is the owner of all assets used or held for use in the operation of the "Matchbox" restaurant located at 2911 District Avenue, Fairfax, VA 22031 (the "Blue Eagle Assets");

WHEREAS, Sawgrass Mills is the owner of all assets used or held for use in the operation of the "Matchbox" restaurant located at 1860 Sawgrass Mills Circle, Space 5100, Sunrise, FL 33323 (the "Sawgrass Mills Assets");

WHEREAS, Pentagon City is the owner of all assets used or held for use in the operation of the "Matchbox" restaurant located at 1100 S. Hayes Street, #H20, Arlington, VA 22202 (the "Pentagon City Assets");

WHEREAS, Preston Hallow is the owner of all assets used or held for use in the operation of the "Matchbox" restaurant located at 7859 Walnut Hill Lane #140, Dallas, TX 75230 (the "Preston Hallow Assets");

1

**WHEREAS**, Gene Poole is the owner of all assets used or held for use in the operation of the "Matchbox" restaurant located at 44720 Thorndike Street, Ashburn, VA 20147 (the "Gene Poole Assets");

**WHEREAS**, Capitol Hill is the owner of all assets used or held for use in the operation of the "Matchbox" restaurant located at 521 8th Street SE, Washington, DC 20003 (the "Capitol Hill Assets");

**WHEREAS**, Rockville is the owner of all assets used or held for use in the operation of the "Matchbox" restaurant located at 1699 Rockville Pike, Rockville, MD 20852 (the "Rockville Assets" and together with the MFG Assets,  Blue Eagle Assets, Sawgrass Mills Assets, Pentagon City Assets, Preston Hallow Assets, Gene Poole Assets, Capitol Hill Assets, the "Assets"); and

**WHEREAS**, the Seller desires to sell, convey, transfer and deliver to the Purchaser, and the Purchaser desires to purchase and receive from the Seller, the Assets, for the consideration of and upon the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.    Recitals.  The Recitals set forth above are hereby incorporated and made a part of this Agreement.

2.    Sale and Purchase of Assets.

2.1.    Subject to the terms and conditions of this Agreement, the Seller shall sell, convey, transfer, assign and deliver all of the Assets to the Purchaser, free and clear of all liens, claims, interests, judgments, mortgages, charges, pledges, liabilities, claims of any party or third party, and encumbrances of any kind and character whatsoever (collectively, "Encumbrances").

2.2.    All ownership interests in, and the assets of, any MFG restaurant locations or subsidiaries of MFG other than the MFG Conveying Restaurants (the "Non-Conveying Subsidiaries") shall be expressly excluded from the Assets, being:  **MATCHBOX, LLC**, which previously operated at 713 H Street NW, Washington, DC 20001; **MATCHBOX 14TH ST LLC**, operating at 1901 14th Street NW, Washington, DC 20009; **HAMMER AND A COCKTAIL, LLC**, operating at 2706 Potomac Mills Circle, Woodbridge, VA 22192; and **DDB, LLC**, which previously operated at 11720 W. Broad Street, Richmond, VA 23233.

2.3.    It is expressly understood and agreed that (A) the Assets include (i) all of the assets used or held for use by the MFG Conveying Restaurants in the operation of the relevant restaurant locations, (ii) all of MFG's equity and other interests in TMV and each subsidiary and restaurant location operated by TMV (including, without limitation, TH Matchbox Franchising, LLC), and (iii) all intellectual property and all intellectual property rights related to the "Matchbox" brand and concept including, without limitation, the assets described in Exhibit A,

2

and (B) the Purchaser does not assume nor shall Purchaser be liable or responsible for any of the excluded liabilities described in Exhibit B.

      2.4.    It is expressly understood that the Purchaser may create one or more subsidiaries, either directly or as subsidiaries of TMV, to acquire the Assets of one or more MFG Conveying Restaurants under this Agreement, and each Seller hereby agrees and consents to transfer such Assets to such subsidiary of Purchaser or TMV as the Purchaser may direct, in its sole discretion, at or prior to Closing, provided that Purchaser shall continue to remain liable after such transfer for all of the Purchaser's obligations under this Agreement.

      3.    <u>Purchase Price</u>.  The purchase price (the "Purchase Price") to be paid by the Purchaser to the Seller for the Assets shall be FOURTEEN MILLION AND 00/100 DOLLARS ($14,000,000.00), which the Parties agree is the market value of the Assets.  The Purchaser shall pay to the Seller at the Closing (as hereinafter defined) by a certified or cashier's check, made payable to the order of the Seller, or by other readily available funds, an amount equal to the Purchase Price.

      4.    <u>Allocation of Purchase Price</u>. The parties agree that the Purchase Price shall be allocated as set forth in Exhibit B. Each party shall perform all necessary acts required for the transaction to be construed in accordance with this Section.

      5.    <u>Bill of Sale</u>.   At the Closing, the Seller shall deliver to the Purchaser a Bill of Sale, in the form attached hereto as <u>Exhibit C</u> and made a part hereof, effectively transferring, assigning and delivering to the Purchaser all of Seller's rights, titles, and interests in and to all of the Assets, free and clear of all Encumbrances.

      6.    <u>Warranty Concerning Assets</u>.  THE PURCHASER ACKNOWLEDGES THAT IT HAS BEEN OPERATING THE MFG CONVEYING RESTAURANTS, THE NON-CONVEYING SUBSIDIARIES AND TMV SINCE THE EFFECTIVE DATE OF THE MANAGEMENT AGREEMENT AND HAS GREATER KNOWLEDGE THAN THE SELLER REGARDING THE ASSETS.  ACCORDINGLY, THE SELLER MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING THE ASSETS, AND THE SALE OF THE ASSETS TO THE PURCHASER HEREUNDER SHALL BE ON AN "AS IS, WHERE IS" BASIS. THE SELLER SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY AND/OR SATISFACTORY QUALITY AND ANY IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. THE PURCHASER ACKNOWLEDGES AND AGREES THAT IT HAS FULLY INSPECTED THE ASSETS AND IS NOT RELYING ON THE JUDGMENT OR REPRESENTATIONS OF THE SELLER IN CONSUMMATING THE CONTEMPLATED TRANSACTIONS.

      7.    <u>Bankruptcy Case</u>.

      7.1.    Within ten (10) business days following the Effective Date, the Seller (for itself, and for each of the Sellers) shall file a bankruptcy petition ("Bankruptcy Case") under the terms of the 11 U.S.C. § 101 et seq. ("Bankruptcy Code") in a United States Bankruptcy Court district deemed appropriate by Seller's bankruptcy counsel. MFG shall provide Purchaser at least two (2) days prior notice of filing the Bankruptcy Case. The Purchaser will promptly provide MFG

such information that it may have related to the Sellers as may reasonably be requested and necessary to file and pursue the Bankruptcy Case.

7.2.    The Seller shall seek approval, from the bankruptcy court in the Bankruptcy Case ("Bankruptcy Court"): (i) to approve the sale of all of the Assets to the Purchaser free and clear of all Encumbrances pursuant to the terms of this Agreement including, without limitation, approval of bid procedures (in consultation with Purchaser) to address the circumstance where third party bidders may make competing offers and that allows for the full three percent (3%) break-up fee under Section 10 hereof, (ii) for the Purchaser to assume and accept assignment of all real property leases for the MFG Conveying Restaurants, and (iii) as part of the Seller's first day motions (A) for the Sellers to continue use of, and maintain in place, the Seller's existing cash management system, as currently managed by the Purchaser under the Management Agreement, and (B) for the Sellers to continue to pay management fees and general and administrative expenses to the Purchaser as provided in Section 6 of the Management Agreement. The Purchaser shall be allowed to communicate directly with the landlords and seek appropriate consents with respect to such leases, as well as the landlords for any restaurants owned and operated by TMV or Purchaser including, without limitation, those that may require consent to a change in control.  The Purchaser agrees to provide all reasonable security, including corporate guarantees, required by such landlord and shall provide for adequate assurance of future performance under the leases as required by the Bankruptcy Code in the context of any assignment approved by the Bankruptcy Court in the Bankruptcy Case.

7.3.    The bankruptcy estate of the Bankruptcy Case ("Bankruptcy Estate") shall cause the current members of the MFG's Board of Managers to be available on a reasonable basis from time to time for telephonic communications until the date that is four (4) years after the date of Closing ("Consulting Fee Due Date").  Provided Closing has occurred, on the Consulting Fee Due Date, the Bankruptcy Estate (or the successor entity created under the terms of a plan confirmed as part of the Bankruptcy Case), shall be paid a consulting fee of FOUR MILLION AND 00/100 DOLLARS ($4,000,000) ("Consulting Fee").  Notwithstanding the foregoing, the Consulting Fee shall be immediately due if, prior to the Consulting Fee Due Date, the Purchaser sells or transfers a majority of the restaurants currently owned by the MFG Conveying Restaurants, in a single transaction or a series of transactions over a twelve-month period.

8.    <u>Purchaser Termination Right</u>.

8.1.    The Purchaser shall have the right, in its sole discretion, to terminate this Agreement upon any of the following circumstances:

8.1.1.    The failure of the Bankruptcy Court to approve of the sale of all of the Assets to the Purchaser free and clear of all Encumbrances, pursuant to the terms of this Agreement (including approving the assignment and assumption of the real property leases for all, and not less than all, of the MFG Conveying Restaurants), within one hundred twenty (120) days after the commencement date of Seller's Bankruptcy Case;

8.1.2.    Aggregate gross revenue of the MFG Conveying Restaurants for the fourth full MFG accounting period (with the accounting periods being thirteen 28-day periods each year) after the Bankruptcy Case filing (or, if the fourth full MFG accounting period has not been

4

DocuSign Envelope ID: 8E6ECAF9-E877-40C3-9D9F-02BACDFA94C2

completed by the Closing, the most recently completed full MFG accounting period) is below seventy percent (70%) of the aggregate gross revenue for the same MFG Conveying Restaurants for the same accounting period in 2019;

8.1.3.   Any federal, state, county, municipal or other government mandate entered or effective subsequent to the Effective Date that one of the MFG Conveying Restaurants operate at a service level less than that which was permitted on the Effective Date, and such mandated reduction in service level lasts for a period longer than ten (10) days.  For the avoidance of doubt, a ban on dine-in service would be considered a lesser service level than being allowed some level of dine-in service, and a change to the level of dine-in service shall be considered a lesser service level if the total allowed customer occupancy of the restaurant (when including both outdoor and indoor customer occupancy) has been reduced;

8.1.4.   The Thompson Super-Priority Financing is not approved by the Bankruptcy Court as super-priority debtor-in-possession financing (as described in Section 12.2 below);

8.1.5.   In the event the Closing has not occurred by December 15, 2020; or

8.1.6.   Any one of the Sellers shall be in material breach or default of its obligations under this Agreement, and fails to cure the breach or default within fifteen (15) days of MFG having received written notice thereof from the Purchaser.

8.2.   If any one (1) or more of the above occurs, the Purchaser may, at Purchaser's option, terminate this Agreement by providing written notice to MFG and the Bankruptcy Court of such termination, and in that event, this Agreement shall terminate, provided, that Sections 9, 10, 15.3, 16 and 18 through 20 shall survive such termination.  If the Purchaser elects to exercise its termination right hereunder pursuant to Section 8.1.2 or 8.1.3, the parties may mutually agree to proceed with a sale pursuant to this Agreement by mutually agreeing in writing upon the removal of one or more of the MFG Conveying Restaurants from the sale ("Removed Restaurants") and adjusting the Purchase Price, calculated by reducing that portion of the Purchase Price allocated to the MFG Conveying Restaurants ("MFG Conveying Restaurants Purchase Price") pro rata based upon the ratio of the gross revenue of the Removed Restaurants during the last full accounting period prior to the parties mutually agreeing to proceed (except for any MFG Conveying Restaurants affected by a government mandate as specified in Section 8.1.3, the last full accounting period prior to such reduced service level shall be used) compared to the gross revenue of the MFG Conveying Restaurants during the last full accounting period prior to the parties jointly agreeing to proceed (except for any MFG Conveying Restaurants affected by a government mandate as specified in Section 8.1.3, the last full accounting period prior to such reduced service level shall be used).

8.3.   Purchaser's right to terminate this Agreement under the Section 8 shall be exercised by the Purchaser by providing written notice to MFG and the Bankruptcy Court by the following dates: (i) in the case of any termination under Section 8.1.1, by the date that is one hundred and forty-five (145) days after the commencement date of Seller's Bankruptcy Case, (ii) in the case of any termination under Section 8.1.2 or 8.1.3, by the date of Closing, (iii) in the case of any termination under Section 8.1.4, by the date that is thirty (30) days after the date the

Bankruptcy Court affirmatively enters an order denying a motion to approve the Thompson Super-Priority Financing as super-priority debtor-in-possession financing (as reasonably determined by Purchaser's bankruptcy counsel), (iv) in the case of termination under Section 8.1.5, December 30, 2020, or (v) in the case of Section 8.1.6, within thirty (30) days following the expiration of the applicable 15-day cure period.

9.    Right of First Refusal for MFG IP. If the Units, Blue Eagle Assets, Sawgrass Mills Assets, Pentagon City Assets, Preston Hallow Assets, Gene Poole Assets, Capitol Hill Assets, and Rockville Assets are sold to a non-Purchaser party or parties as part of the Bankruptcy Case, then in the event of subsequent third party offer for the MFG IP acceptable to the Bankruptcy Court, the Purchaser shall be given, with respect to each such offer, written notice thereof and a copy of said offer including the name and address of the proposed purchaser; and the Purchaser shall have the option and right of first refusal for fifteen (15) business days after receipt of such notice within which to elect to purchase the MFG IP on the terms of said offer ("Right of First Refusal"). In order for the Purchaser to exercise its Right of First Refusal, it must give notice of such election to the Bankruptcy Court within the fifteen (15) business day period. If the Purchaser fails to provide such notice and proceed with due diligence to purchase the MFG IP, then the Bankruptcy Court may proceed to complete the sale of the MFG IP to the proposed purchaser stated in the written offer.

10.    Break-Up Fee.   In consideration of the expenses incurred by the Purchaser in entering into this Agreement, the parties agree that, if the Closing does not occur and the Assets are sold to one or more parties other than Purchaser, the Purchaser shall be entitled to and the Sellers (on a joint and several basis) shall pay Purchaser a fee equal to three percent (3%) of the Purchase Price (or such lesser amount as may be approved by the Bankruptcy Court) to compensate it for such expenses and potential damages; and the Sellers agree to seek approval from the Bankruptcy Court for the full three percent (3%) in connection with any motion filed with respect to bidding procedures.

11.    Pre-Bankruptcy Payments.

11.1.    Prior to commencing the Bankruptcy Case through the filing of a petition by the Seller, the Purchaser shall cause the following payments, if not already paid prior to the Effective Date, to be made from existing cash on hand of the MFG Conveying Restaurants and Non-Conveying Subsidiaries:

11.1.1. The sum of THIRTY-FIVE THOUSAND DOLLARS ($35,000.00) shall be paid to the law firm of McNamee Hosea, as a retainer payment for legal services provided in relation to the commencing of the Bankruptcy Case, plus all required filing fees of the Bankruptcy Case;

11.1.2. The sum of TWENTY THOUSAND DOLLARS ($20,000.00) shall be paid to The Veritas Law Firm, as a retainer payment for legal services related to this transaction;

11.1.3. The sum of TEN THOUSAND DOLLARS ($10,000.00) shall be paid to Redmon, Peyton and Braswell, as a retainer payment for legal services related to this transaction;

11.1.4. The sum of TEN THOUSAND DOLLARS ($10,000.00) shall be paid to Executive Counsel PLC, as a retainer payment for legal services related to this transaction;

11.1.5. The sum of FIFTY THOUSAND DOLLARS ($50,000.00) shall be paid to a public relations firm engaged and selected by the Purchaser to undertake public relations efforts intended to enhance and protect the value of the "Matchbox" brand;

11.1.6. The monthly payment for calendar month June 2020 (and if then due, July 2020) due to EagleBank from the Seller; and

11.1.7. Priming liens, including but not limited to payroll expenses and sales tax for the Seller's restaurant operations.

11.2. Prior to the Bankruptcy Case, the Purchaser may (but shall not be obligated to, except to the extent otherwise required by Sections 3.2.2 and 3.2.3 of the Management Agreement and then only to the extent of any payments that are funded solely from cash generated by the operations of MFG Conveying Restaurants or Non-Conveying Subsidiaries), in its sole discretion as manager of the Seller's restaurant operations under the Management Agreement, pay from existing cash on hand of the MFG Conveying Restaurants and Non-Conveying Subsidiaries any operating expenses for either MFG Conveying Restaurants or Non-Conveying Subsidiaries, as the Purchaser deems appropriate in its sole discretion.

12.    Post-Petition Operations and Finances.    After the commencement of the Bankruptcy Case and prior to the earlier of the Closing or the termination of this Agreement:

12.1.    The Purchaser shall use all commercially reasonable efforts to properly staff and market the MFG Conveying Restaurants in a good faith effort to maximize revenue.

12.2.    Provided the same is approved by the Bankruptcy Court as super-priority debtor-in-possession financing (meaning (i) superior to any existing liens and all secured and unsecured creditors of the Seller and the Bankruptcy Estate, and (ii) superior to all other administrative expense claims as to unencumbered assets and cash) the Purchaser shall lend TWO MILLION AND 00/100 DOLLARS ($2,000,000.00) (the "Thompson Super-Priority Financing") or so much thereof as may be necessary or appropriate to supplement the operating revenues (i.e., any cash on hand after the Bankruptcy Case is commenced and any cash flow generated from operations after the Bankruptcy Case is commenced) to cover overhead and operating expenses of the MFG Conveying Restaurants. Purchaser's obligation to provide super-priority debtor-in-possession financing pursuant to this Section 12.2 is an independent covenant and shall survive any termination of this Agreement under Subsections 8.1, 8.2, or 8.3 hereof.

12.3.    Cash on hand generated from each of the MFG Conveying Restaurants shall be used to pay:

12.3.1. Accrued interest to EagleBank;

12.3.2. All Remaining priming liens (including payments related to claims regarding wage and hour laws); and

12.3.3. All post-petition operating expenses of the MFG Conveying Restaurants, including but not limited to post-petition rent, payroll, taxes, and utilities.

12.4.   If cash on hand and cash generated from post-petition operations (which, for the avoidance of doubt, shall not include the Thompson Super-Priority Financing) are insufficient to cover all overhead and operating expenses, then the Thompson Super-Priority Financing of up to TWO MILLION AND 00/100 DOLLARS ($2,000,000.00) may be used to pay for such shortfalls. In the event the Assets are transferred to Purchaser as provided herein, then (i) fifty percent (50%) of all amounts advanced under the Thompson Super-Priority Financing will be deducted from the Purchase Price and Consulting Fee as follows: one-half deducted from the Purchase Price and one-half deducted from the Consulting Fee, and (ii) upon Closing, the Thompson Super-Priority Financing shall be deemed paid in full. In the event the Assets are not transferred to the Purchaser as provided herein, the full amount advanced by the Purchaser shall be paid to the Purchaser pursuant to order of the Bankruptcy Court.

12.5.   At Closing, any remaining cash on hand in the MFG Conveying Restaurants shall be used to pay: (i) first, any unpaid post-petition operating expenses as of the date of Closing; (ii) second, any amounts required to cure defaults existing under the real property leases of the MFG Conveying Restaurants; (iii) third, to any unpaid pre-petition operating expenses that were not otherwise paid prior to Closing; and (iv) last, to the Purchaser as part of the Assets.

12.6.   If the Thompson Super-Priority Financing is approved by the Bankruptcy Court but not sufficient to fund all post-petition operating expenses of the MFG Conveying Restaurants, then upon the mutual consent of the parties, the parties may seek additional debtor-in-possession financing (or other similar arrangements).

12.7.   It is expressly understood any agreed that (i) the Purchaser shall not in any manner be obligated to pay any amounts with respect to, (ii) none of the cash on hand or cash generated from post-petition operations of the MFG Conveying Restaurants shall be used for, and (iii) no amounts shall be advanced or used under the Thompson Super-Priority Financing for, any cost or expense related to the Non-Conveying Subsidiaries or any restaurant location operated by any of the Non-Conveying Subsidiaries including, without limitation, any rent or other payments that may be due or payable under any real property lease for those locations. Any funding for the Non-Conveying locations shall be taken solely from cash generated by the operations of the restaurant locations operated by the Non-Conveying Subsidiaries.

13.    <u>Conditions Precedent</u>.

13.1.   The obligation of the parties to proceed to the Closing under this Agreement is expressly subject to the following conditions:

13.1.1. An order of the Bankruptcy Court in the Bankruptcy Case approving the sale, transfer and assignment of the Assets to the Purchaser free and clear of all Encumbrances

and pursuant to the terms of this Agreement, which shall include a waiver of the stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy; and

          13.1.2. The approval by the Bankruptcy Court of the assumption and assignment to the Purchaser of all, but not less than all, of the real property leases of the MFG Conveying Restaurants.

14.    <u>Closing</u>.  The closing (the "Closing") shall take place at such place mutually agreed to by the parties, within twenty (20) calendar days of when all of the contingencies contained in Section 13 hereof have been completed.

15.    <u>Waiver by Thompson; Termination of Certain Agreements</u>.

          15.1.    Upon the Closing, Thompson agrees to waive all distributions owed to it pursuant to the terms of the Management Agreement (and any loans discussed therein).  If the Assets are not sold to Thompson in contravention of the terms of this Agreement, Thompson reserves all rights it may have under the Bankruptcy Code to seek its share of distributions.

          15.2.    Upon Closing, it is expressly understood and agreed that each of (i) the Management Agreement, and (ii) that certain Loan and Security Agreement, dated July 12, 2018, between MFG, Purchaser and TMV, including each Promissory Note issued in connection therewith, are and shall be terminated in all respects, and Purchaser shall be released and forever discharged from any further duties, liabilities or obligations thereunder.

          15.3.    It is expressly understood and agreed that at and as of the Effective Date (i) with the sole exception of the Thompson Super-Priority Financing, neither the Purchaser nor any affiliate thereof has or will have any obligation to provide any funding, loans or advances to any one or more of the Sellers (whether MFG, any MFG Conveying Restaurant, any Non-Conveying Restaurant, or otherwise) whether under Section 8.4 of the Management Agreement, under that certain Loan and Security Agreement, dated July 12, 2018, under that certain Promissory Note, dated July 12, 2018, or otherwise, and (ii) for the avoidance of doubt: (A) the Management Agreement is hereby amended to delete, in its entirety, Section 8.4 thereof, and (B) any and all obligations, if any, of the Purchaser to provide the Sellers with loans or advances under the Management Agreement, such Loan and Security Agreement, or such Promissory Note, or otherwise are hereby terminated in all respects. This Section 15.3  is effective at and as of the Effective Date, and shall survive any termination or expiration of this Agreement.

16.    <u>Operation of TMV's Restaurants</u>.  The parties agree that although Seller owns an interest in TMV, the assets of TMV's "Matchbox" restaurants are not and shall not be part of the Bankruptcy Case nor the Bankruptcy Estate, and accordingly, Thompson shall at all times retain the authority and discretion to operate the restaurants pursuant to the TMV OA. Neither MFG nor any Seller shall take any action, or suffer any action to be taken, that would cause any of the assets of the TMV "Matchbox" restaurants to become a part of the Bankruptcy Case or otherwise be treated as property of the Bankruptcy Estate.

17.    <u>Deliveries at Closing</u>.  At the Closing, the Purchaser and/or the Seller, as the case may be, shall execute and deliver the following:

17.1.    The Purchaser shall deliver the Purchase Price to the Seller.

17.2.    The Seller shall execute and deliver the Bill of Sale to the Purchaser.

17.3.    The parties shall execute and deliver such other documentation, certifications, instruments or conveyance, lien releases, and other materials as may be reasonably requested by the other party to establish transfer of the Assets and assignment of all real property leases, in each case free and clear of any and all Encumbrances.

18.    Broker.    The parties acknowledge that there is no broker involved in this transaction.  The parties hereby agree to indemnify and hold each other harmless from the claims of any party making a claim for commission or fee in connection with this transaction.

19.    Notice.  All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered personally, sent by a recognized overnight courier (e.g., Federal Express), or if sent by registered or certified mail, return receipt requested, and postage prepaid, to the following addresses (or such other addresses as each party may notify the other in writing):

| | |
|---|---|
| To Purchaser: | Thompson Hospitality Corporation<br>1741 Business Center Drive, Suite 200<br>Reston, VA 20190<br>Attn: Ali Azima |
| With a copy to: | Executive Counsel, PLC<br>12989 Thistlethorn Drive<br>Oak Hill, Virginia 20171<br>Attn: Peter A. Deliso |
| To Seller: | Larry Bensignor, Manager<br>8900 Falls Chapel Way<br>Potomac MD 20854 |
| With a copy to: | c/o Ron Paul, Manager,<br>Ronald D. Paul Companies, Inc.<br>4416 East-West Highway, Third Floor<br>Bethesda, MD 20814 |
| With a copy to: | The Veritas Law Firm<br>1225 19th Street N.W.<br>Washington, D.C. 20036<br>Attn.: Andrew J. Kline, Esq. |

All such notices shall be effective upon receipt or refusal to accept (if hand-delivered or sent by overnight courier) or three (3) business days after mailing (if mailed).

20.   <u>Miscellaneous</u>.

20.1.   *Governing Law.* This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Virginia, without regard to conflicts of laws principles.

20.2.   *Waiver of Jury Trial.* THE SELLER AND THE PURCHASER HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

20.3.   *No Partnership.* This Agreement is not, and shall not be construed to be, a partnership between the parties hereto.  No action of any party hereto shall be binding upon any other party to this Agreement.  No party hereto shall have the power or authority to act on any other party's behalf, nor shall any party have the power or authority to act as the other party's agent.

20.4.   *Assignment.* This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.  This Agreement may not be assigned or otherwise transferred by either party without the express prior written consent of the other party.  Notwithstanding the foregoing, the Purchaser may assign the right to purchase any of the Blue Eagle Assets, Sawgrass Mills Assets, Pentagon City Assets, Preston Hallow Assets, Gene Poole Assets, Capitol Hill Assets and Rockville Assets to one or more wholly-owned subsidiaries of the Purchaser or TMV, provided that the Purchaser shall continue to remain liable after such assignment(s) for all of the Purchaser's obligations pursuant to the terms of this Agreement.

20.5.   *Waivers.* No course of dealing between either of the parties hereto, nor any failure to exercise, nor any delay in exercising, any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

20.6.   *Severability.* The provisions of this Agreement are severable. If any clause or provision hereof shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall affect only such clause or provision or part thereof in such jurisdiction and shall not in any manner affect such clause or provision in any other jurisdiction or any other clause or provision in this Agreement in any jurisdiction.

20.7.   *Counterparts.* This Agreement may be executed by facsimile or 'pdf' and in any number of counterparts, each of which shall be deemed an original, and all of which, when taken together, shall constitute one (1) and the same instrument.

20.8.   *Closing Costs.* Except as otherwise set forth in this Agreement, all costs and expenses incurred by either party in connection with this Agreement or the Closing hereunder shall be borne by the party incurring the same, with Seller's share paid prior to application of the Purchase Price to the extent of cash on hand.

11

20.9.   *Time of the Essence*.   Time is of the essence in the performance of this Agreement.

20.10.   *Right to Counsel*.   The parties have reviewed and understand this Agreement, and each has had a full opportunity to negotiate the Agreement's terms and to consult with counsel of their own choosing.

20.11.   *Further Assurances*. From and after the date of this Agreement, upon the request of either party, the parties hereto shall execute and deliver such instruments, documents or other writings as may be reasonably necessary or desirable to confirm and carry out and to effectuate fully the intent and purposes of this Agreement.

20.12.   *Attorneys' Fees*.   If either party hereto shall default in the performance of any covenant or obligation on its part to be performed by virtue of any provision in this Agreement, and if in connection with the enforcement of the non-defaulting party's rights or remedies, such non-defaulting party shall properly and reasonably incur fees and expenses for services rendered (including reasonable attorneys' fees), then such fees and expenses shall, if said non-defaulting party shall prevail in litigation, be immediately reimbursed by the defaulting party on demand.

**[SIGNATURES ON FOLLOWING PAGE]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Asset Purchase Agreement as of the date and year first hereinabove written.

**PURCHASER:**

THOMPSON HOSPITALITY CORPORATION

By:_____
Name:
Title:

**SELLERS:**

MATCHBOX FOOD GROUP LLC

By: _____
      Name:  Edwin A. Sheridan, IV
      Title:   Manager

BLUE EAGLE, LLC

By:      MATCHBOX FOOD GROUP LLC,
      its Manager

By: _____
      Name:  Edwin A. Sheridan, IV
      Title:   Manager

BUTTERMILK, LLC

By:      MATCHBOX FOOD GROUP LLC,
      its Manager

By:_____
      Name:  Edwin A. Sheridan, IV
      Title:   Manager

CARIBOU HUNTER, LLC

By:      MATCHBOX FOOD GROUP LLC,
its Manager

By:_____
      Name:  Edwin A. Sheridan, IV
      Title:   Manager

FIRST MB STAR, LLC

By:      MATCHBOX FOOD GROUP LLC,
      its Manager

By:_____
      Name:  Edwin A. Sheridan, IV
      Title:   Manager

GENE POOLE, LLC

By:      MATCHBOX FOOD GROUP LLC,
      its Manager

By:_____
      Name:  Edwin A. Sheridan, IV
      Title:   Manager

MATCHBOX CAPITOL HILL, LLC

By:      MATCHBOX FOOD GROUP LLC,
      its Manager

By:_____
      Name:  Edwin A. Sheridan, IV
      Title:   Manager

MATCHBOX ROCKVILLE, LLC

By:      MATCHBOX FOOD GROUP LLC,
      its Manager

By:_____
      Name:  Edwin A. Sheridan, IV
      Title:   Manager

13

# EXHIBIT A

## *Included Assets*

It is expressly understood and agreed that the Assets include (i) all of the assets used or held for use by the MFG Conveying Restaurants, and (ii) all intellectual property and all intellectual property rights related to the "Matchbox" brand and concept including, without limitation, the following:

(a)     all machinery, equipment, instruments, computer hardware and software, furniture, fixtures, leasehold improvements and all other tangible personal property, and replacement items therefor, used or useful in the operation of the MFG Conveying Restaurants all such items acquired on or after the date hereof and on or before the Closing;

(b)     all accounts receivable and any remaining cash (as provided in Section 12.5);

(c)     all inventories on hand and/or on order as of the Closing;

(d)     all of the contracts, leases, licenses, permits, consents and other agreements related to the operation MFG Conveying Restaurants and to which any Sellers is a party, or pursuant to which the Sellers have any rights including, without limitation, the real property leases for each of the MFG Conveying Restaurants;

(e)     (i) any and all intellectual and intangible property and confidential business information including, without limitation, all trade secrets, ideas, know-how, patents, patent applications, inventions, operational and production processes and techniques, formulae, recipes, menus, menu items, interior and exterior design and décor, supplier and customer lists, products, services, plans, proposals, business and marketing approaches and plans, trademarks, logos, service marks, trade dress, trade names, brand names, trade dress, slogans, internet domains and domain names, graphics or images, text, audio or visual works, copyrights, and all registrations, applications and renewals for any of the foregoing (collectively, "Intellectual Property") with respect to the restaurants and restaurant concept operated, managed or licensed by the Sellers under the brand name "Matchbox ", (ii) any and all intellectual property rights claiming or covering such Intellectual Property, and (iii) any and all causes of action that may have accrued to the undersigned in connection with such Intellectual Property and/or intellectual property rights;

(f)     all rights to all telephone lines and numbers used in connection with the MFG Conveying Restaurants;

(g)     all business files, books and records, ledgers, and all other operating data and records relating to the MFG Conveying Restaurants including without limitation customer lists and customer records, financial, accounting and credit records, correspondence, budgets, engineering, inspection and facility records and other similar documents and records (in all media and forms);

(h)      all marketing, advertising, signage, promotional and other printed or written information and materials, including, without limitation, "Yellow Pages" and "Yellow Book" advertisements and other advertisements, letterhead, logos, business cards, promotional materials and all fee schedules;

(j)      all of the Sellers' rights under warranties, indemnities and all similar rights against third parties to the extent related to any of the Assets;

(k)      all insurance benefits, including rights and proceeds, arising from or relating to the Assets;

(l)      all security deposits made under any real property leases for the MFG Conveying Restaurants;

(m)      all of the Sellers' rights, title and interest in and to the exclusive right to all goodwill and going concern value, including, without limitation, the use of the name "Matchbox", all associated logos as all or part of a trade or corporate name or otherwise, and any other intangible assets; and

(n)      all other assets and properties used by, or useful in the operation of the MFG Conveying Restaurants.

## _Excluded Liabilities_

Except as expressly agreed in writing by the Purchaser, the Purchaser does not and will not assume, or in any way become responsible or liable for any debts, liabilities or obligations of any kind or nature whatsoever (whether accrued or unaccrued, absolute or contingent, known or unknown, due or to become due, liquidated or unliquidated or secured or unsecured and regardless of when asserted) of any of the Sellers or any other person or entity or related in any way to the MFG Conveying Restaurants or the Assets (collectively, the "Excluded Liabilities").  Without limiting the generality of the foregoing, the Excluded Liabilities shall include, but not be limited to, the following:

(a)      any and all liabilities, obligations or commitments of the Sellers or otherwise related to the MFG Conveying Restaurants (i) to any current or former member, officer, manager, or employee of any Sellers, (ii) with respect to any loans provided to the Sellers by any of the forgoing or by any other person or entity, and (iii) for any pending or threatened action or claim arising from any fact or condition existing prior to the Closing;

(b)      any and all liabilities, obligations or commitments of the Sellers or otherwise related to the MFG Conveying Restaurants (i) to Eagle Bank, Egg Cream, LLC, Potomac Investment Trust, any PIT Lenders (as defined in that certain Amended and Restated Subordination and Standstill Agreement, dated 12 July 2018, between MFG, THC, Egg Cream, LLC, and Potomac Investment Trust, as Administrative Agent for the PIT Lenders), or (ii) related to or arising out of any loans extended to any Seller under the Payroll Protection Program;

15

(c)      liabilities relating to any pending or threatened action or claim in respect of the Assets to the extent such action relates to operation of the MFG Conveying Restaurants prior to Closing; and

(d)      taxes of the Sellers relating to the MFG Conveying Restaurants or the Assets for any pre-Closing tax period.

# EXHIBIT B

<u>The Purchase Price will be allocated as follows:</u>

Assuming the full 14.0MM at closing:

| | |
|---|---|
| FF&E | $9.0MM |
| Inventory | $0.5MM |
| Leasehold improvements | $2.0 MM |
| Trade mark License | $2.5 MM |
| | |
| Total | $14.0 MM |

17

# EXHIBIT C

## Bill of Sale

For **FOURTEEN MILLION AND 00/100 DOLLARS ($14,000,000.00)** and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, **FB LIQUOR L.L.C.**, a District of Columbia limited liability company (the "Seller"), hereby  grants, bargains, sells, conveys and transfers to **THOMPSON HOSPITALITY CORPORATION**, a Delaware corporation (the "Purchaser"), its successors and assigns, the Assets,  as defined in and subject to the terms and conditions of that certain Asset Purchase Agreement by and between the Seller and the Purchaser, dated as of July ___, 2020 (the "Agreement"), free and clear of all liens, pledges and encumbrances of any kind and character whatsoever.

**IN WITNESS WHEREOF**, this Bill of Sale has been executed and shall be effective as of this _____ day of _____, 202_.

MATCHBOX FOOD GROUP LLC

BLUE EAGLE, LLC

By:    MATCHBOX FOOD GROUP LLC,
       its Manager

By: _____
      Name:   Edwin A. Sheridan, IV
      Title:   Manager

By: _____
      Name:   Edwin A. Sheridan, IV
      Title:   Manager

BUTTERMILK, LLC

CARIBOU HUNTER, LLC

By:    MATCHBOX FOOD GROUP LLC,
      its Manager

By:    MATCHBOX FOOD GROUP LLC,
      its Manager

By:_____
      Name:   Edwin A. Sheridan, IV
      Title:   Manager

By:_____
      Name:   Edwin A. Sheridan, IV
      Title:   Manager

FIRST MB STAR, LLC

GENE POOLE, LLC

By:    MATCHBOX FOOD GROUP LLC,
      its Manager

By:    MATCHBOX FOOD GROUP LLC,
      its Manager

By:_____
      Name:   Edwin A. Sheridan, IV
      Title:   Manager

By:_____
      Name:   Edwin A. Sheridan, IV
      Title:   Manager

MATCHBOX CAPITOL HILL, LLC

MATCHBOX ROCKVILLE, LLC

By:    MATCHBOX FOOD GROUP LLC,
      its Manager

By:    MATCHBOX FOOD GROUP LLC,
      its Manager

By:_____
      Name:   Edwin A. Sheridan, IV
      Title:   Manager

By:_____
      Name:   Edwin A. Sheridan, IV
      Title:   Manager